PAYNE *v.* STATE

[No. 119, October Term, 1954.]

*Decided April 15, 1955.*

The cause was argued before BRUNE, C. J., DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Milton B. Allen,* with whom were *Harry H. Cole, Brown, Allen & Watts,* and *George L. Parrish* on the brief, for appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Anselm Sodaro, State's Attorney for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal is from judgment and sentence which followed conviction for violation of the lottery laws by the court sitting without a jury in the Criminal Court of Baltimore. It is said that the court erred in admitting lottery tickets taken from the appellant in a search of his person because the arrest was illegal and the search unauthorized.

Vice squad officers saw the appellant leave an automobile, go into a rear yard and shortly thereafter, emerge from the front door of the premises. They stopped appellant to question him about lottery. He claims, and they deny, that they then searched him. They asked him to go with them to the house from which he had come and questioned him in the presence of the woman who lived there. She corroborated his statement that he had come for the purpose of giving an estimate of the cost of painting her kitchen. The appellant was then released and the officers went to the rear of the property and watched through a hole in the fence. In a short time, the lady of the house came out, bearing lottery slips which she put in the garbage can. She took the garbage can to another yard. The officers retrieved it and went back to talk to her. One of them then went to seek appellant, who was found three or four blocks away getting into a taxi-cab. The officer demanded that he return with him to the house. In his presence, the lady of the house said that she had been writing numbers for several months and that appellant picked up her numbers. He had picked them up that day and had put them in a cloth bag which was attached to his pants between his legs. One of the officers testified that at that point he asked appellant if he could search him and that the reply was: "Yes, go ahead." The search revealed the lottery tickets which the court admitted in evidence over objection.

Appellant contends that he was illegally arrested and that under those circumstances, the consent he gave to the search was not actually consent but rather submission to apparent authority. We may assume, as did the trial court, that the arrest of appellant occurred when the demand was made that he go with the officer back to the house and that the arrest was illegal. The record does not show that the police had reason to believe that a misdemeanor was being committed in their presence with the precision demanded by the cases. It does not follow that the search of the appellant was unlawful.

54

Appellant relies on cases in the Federal Courts and the courts of other States which hold, in effect, that one who denies his guilt but acquiesces in a search does not, by the words or signs of acquiescence, show consent but that there is presumption of coercion, either physical or psychological or both, which makes the appellant's apparent consent mere submission. It is recognized, even in the authorities he cites, that there may be in fact a voluntary consent which will waive a constitutional or a statutory right. See, for example, *United States v. Waller*, 108 F. Supp. 450, 453; and *United States v. Mitchell*, 322 U. S. 65, 88 L. Ed. 1140. The law of other jurisdictions will not control because this Court has spoken on the subject. In *Blager v. State*, 162 Md. 664, the accused was accosted by the police and asked to give up lottery slips which it was suspected he had, and he did so. It was held that since no force or coercion had been employed, the consent to the surrender of the incriminating evidence was effective. *Courtney v. State*, 187 Md. 1, held that the fact that an arrest was illegal does not make a confession inadmissible as obtained by duress if, in fact, it was voluntarily made. It was also said in that case that the Bouse Act, Code (1951), Art. 35, sec. 5, which changed the common law rule in case of misdemeanors as to the admissibility of evidence obtained without a search warrant, was not applicable to arrests in general, and that: "* * * even under that statute a voluntary surrender of incriminating evidence may make such evidence admissible." In *Hubbard v. State*, 195 Md. 103, the Court sets forth the test to be applied in adjudging whether a waiver of the right not to be searched was voluntary in these words: "In a case like this, where the traverser testifies that the search was made over her objection, and the police officers testify that she permitted them to make the search, whether the fruits of the search should go to the jury is in the first instance a matter for the court. If the court is of the opinion that the accused freely and voluntarily consented to the search, and there was no coercion or fear

brought to bear upon the traverser by the police, the matter should be submitted to the jury, and it is then for the jury to say, on all the facts, whether the traverser waived her right she might have to object to the search." See also *Reed v. State,* 197 Md. 540, 542-543; *Heyward v. State,* 161 Md. 685; and *Martin v. State,* 203 Md. 66.

The trial court said that if the appellant had objected to the search after his arrest: "* * * we think perhaps the original arrest was unlawful and then the Bouse Statute would apply and the contraband would not be evidence, but in this case the officer says that he sought and obtained his permission and the defendant himself rather confirms than denies that testimony and it is for that reason that we think the evidence is admissible. * * * This man was found under suspicious circumstances, he consented that his person be searched and when he was searched concealed in his underwear was found contraband * * *."

Appellant does not deny in this Court, any more than he did below that he consented, ostensibly at least, to the search of his person. Certainly there was no evidence of coercion or duress strong enough to require the court to rule as a matter of law that the trier of the facts should not pass on whether consent was voluntary or not. We cannot say that the trial court's decision that consent was voluntary was wrong. This being so, the evidence which the search produced was admissible and judgment must be affirmed.

*Judgment affirmed, with costs.*