## SHROUT *v.* STATE

[No. 212, September Term, 1964.]

*Decided March 30, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, SYBERT, OPPENHEIMER and BARNES, JJ.

*William L. Wilson,* with whom was *Edward J. Ryan* on the brief, for appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, James S. Getty* and *Donald W. Mason, State's Attorney* and *Deputy State's Attorney,* respectively, *for Allegany County,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant appeals from his convictions in the Circuit Court for Allegany County on gambling charges on the sole grounds that the facts set forth in the affidavit and application for the search warrant were not sufficient to show probable cause for the issuance of the warrant and that the evidence obtained therefrom was therefore improperly admitted. The State contends the facts alleged were sufficient to show probable cause and that, in any event, the appellant waived any right to object to the issuance of the warrant and the evidence secured thereunder because he did not file a motion to quash the warrant before trial under Maryland Rule 725 a and b.

While the appellant did not file a motion before the trial, at the trial he moved to quash the search warrant and to suppress any evidence discovered thereby. He objected to the evidence in connection with the issuance of the warrant and renewed his motion at the conclusion of the testimony. The court below denied the motions and overruled the objections.

Maryland Rule 725 b reads as follows:

> "Defenses and objections based on defects in the institution of the prosecution or in the indictment, other than that it fails to show jurisdiction in the court or to charge an offense, must be raised by motion before trial. Such motion shall include all such defenses and objections then available to the accused. Failure to present any such defense or objection as herein provided *shall* constitute a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment to

charge an offense shall be noticed by the court at any time during the proceeding. Any defense or objection capable of determination without the trial of the general issue *may* be raised before trial by motion." (Emphasis supplied).

It is to be noted that under the Rule, while defenses and objections based on defects in the institution of the prosecution or in the indictments (other than jurisdictional defects) must be raised by motion before trial to prevent waiver, other defenses and objections may be raised before trial by motion. The distinction between the compulsive "shall" and the permissive "may" is not inadvertent. In *Sugarman v. State,* 173 Md. 52, 57-58, 195 Atl. 324 (1937), we held that a motion before trial to declare a search warrant null and void and to suppress use of the articles seized as evidence was not authorized by statute or precedent. In *Rizzo v. State,* 201 Md. 206, 211, 93 A. 2d 280 (1952) we noted that such a motion to quash a search warrant had been authorized by statute, which is now Code (1957), Article 27, Section 551. The matter, at this time, is covered by our Rule. Neither the Rule nor its history, however, supports the State's contention that if a defendant does not move to quash the warrant before the trial, he is thereafter barred from objecting to the evidence seized as a result of its issuance. See *Baum v. State,* 163 Md. 153, 157, 161 Atl. 244 (1932).

This Court has steadfastly recognized that protection against unlawful searches and seizures is one of the bulwarks of individual liberty, recognized in the Maryland and Federal Constitutions. E.g. *Asner v. State,* 193 Md. 68, 75, 65 A. 2d 881 (1949) ; *Wood v. State,* 185 Md. 280, 44 A. 2d 859 (1945). See also *Givner v. State,* 210 Md. 484, 492-494, 124 A. 2d 764 (1956). As was held in *Asner,* at p. 73, timely objections must be made at the trial to the issuance of the warrant and the evidence seized, and there can be a waiver of objections to the admissibility of the evidence. See also *Martelly v. State,* 230 Md. 341, 346-348, 187 A. 2d 105 (1963). In *Farrow v. State,* 233 Md. 526, 532-533, 197 A. 2d 434 (1964), we stated that the admissibility of evidence which is dependent upon the lawfulness of an arrest should be ruled upon by the trial judge

as a preliminary matter, and referred to Maryland Rule 725 b and c. In our reference to the Rule, however, we were careful to point out that such a question "may" be raised by motion before trial. If a defendant raises the question by preliminary motion and prevails, and if the evidence suppressed is vital to the State's case, the defendant may not be put to the hazard of a trial on his guilt or innocence. But there is nothing in the Rule or in our decisions to support the State's contention that, if the defendant does not make such a preliminary motion, his objections to the issuance of the warrant and the evidence seized thereunder are thereafter without avail. In this case, the appellant's motion to suppress the evidence and objection to its introduction at the trial preserved his basic constitutional right.

The affidavit upon which the search warrant was issued was made by two police officers and involved the activities of two men, Orland James Harbell (Harbell), who was charged and tried separately, and the appellant. The salient facts set out in the affidavit are as follows: A special tax stamp (wagering) had been issued by the United States Internal Revenue Service to Harbell, 109 North Centre Street, Cumberland, Maryland, about five months before the date of the affidavit. Harbell had been convicted on a charge of bookmaking in the Circuit Court for Allegany County in 1953. One of the officers had been informed by a confidential informant that Harbell, alias "Chick" Orbello, had been an active bookmaker in Cumberland for many years. The informant stated that he had never personally placed a wager with Orbello, but knew several persons who placed such wagers regularly. The informant had previously provided the officer with information regarding gambling that proved to be reliable. Another confidential informant stated that Harbell "is generally known to be actively engaged in bookmaking and closely associated in said operation" with the appellant, who has also been convicted of bookmaking in Allegany County. The officers put both Harbell and the appellant under surveillance for four consecutive days. The appellant apparently lived on Greene Street in Cumberland but frequented an apartment to which he had a key in a house on Bedford Street, next door to but not physically connected with the Centre Street house in which Harbell had an apartment. The two premises, however,

were connected by a telephone wire which was "not the type connection ordinarily made by the telephone company installers." Harbell was seen on several occasions entering the Bedford Street premises. He was observed visiting various taverns and other Cumberland business establishments for brief periods, and heard reading racing results and the pay-off price over a public telephone before one of his visits to the Bedford Street apartment. The appellant was observed buying a paper devoted primarily to horse racing results and horses before going to the Bedford Street apartment, which was not in his name. The officers making the affidavits had been on the police force for nine and thirteen years, respectively; they made oath they were experienced in investigating bookmaking and gambling activities and that "based on their experience in surveillance and observation of such illegal activities," the actions of Harbell and the appellant "indicate that they are engaged in said illegal bookmaking activities." On the basis of this affidavit, Judge Cobey issued the search warrant requested.

The appellant contends that the report of the informant is not a proper showing of probable cause because the informant is not named and could have obtained his information from any number of unknown persons. We have held that an affidavit based upon a recital of an alleged conversation with an unknown individual, standing alone, cannot form the basis for a proper search warrant. *Howard v. State,* 199 Md. 529, 87 A. 2d 161 (1952); see also *Kapler v. State,* 194 Md. 580, 587-588, 71 A. 2d 860 (1950). However, even though the affidavit contains insufficient or even improper information which should not be considered by the court, if, in addition, it contains sufficient proper information to show probable cause, the court is justified in issuing the warrant. *Kapler v. State, supra; Bratburd v. State,* 193 Md. 352, 357, 66 A. 2d 792 (1949). In *Drouin v. State,* 222 Md. 271, 286-287, 160 A. 2d 85 (1960), we held that if the accused asserts any substantial ground indicating that the identity of the informer is material to his defense or the fair determination of the issue of probable cause, the trial court should require the informer's name to be given or order the evidence suppressed. In that case, however, no warrant had been issued and the evidence, without the informer's communications, was insufficient to establish probable

cause for the defendant's arrest. In this case, the record does not indicate that, at the trial, the appellant requested disclosure of the informer's identity.

Entirely apart from the information received from the informer, in our opinion, there were ample facts set forth in the affidavit to show probable cause for the issuance of the warrant. These facts included the issuing of the wagering tax stamp to Harbell, Harbell's overheard telephone conversations about racing results and the pay-off, the use by both Harbell and the appellant of the Bedford Street apartment, and the unusual telephone wire between that apartment and the one in the next house which Harbell occupied. The association between the two men referred to in the report of the second unnamed informant was strongly indicated by the officers' actual observation of their activities. In their application for the writ, the officers referred only to the results of their actual surveillance and observation. The experience and special knowledge of the officers who make the affidavit are among the facts which the court may consider. *Bratburd v. State, supra,* at 356. See also *Wood v. State, supra,* at 286.

In support of his contention that the facts set forth in the affidavit do not show probable cause for the issuance of the warrant, the appellant cites *Aguilar v. Texas,* 378 U. S. 108 (1964). In that case, the affidavit on which the search warrant was issued recited that the affiants had received reliable information and believed that narcotics were being kept at the suspected premises in violation of law. The Supreme Court held that the warrant was issued without probable cause and reversed judgment of conviction. The warrant involved in that case did not set forth facts observed by the officers as a result of their personal surveillance, such as were set forth in the present case. Far closer to this case is *United States v. Ventresca,* 380 U. S. 102.

In *Ventresca,* the affidavit on which the search warrant was issued was made by one Mazaka, an Investigator for the Alcohol and Tobacco Division of the Internal Revenue Service. He stated he had reason to believe an illegal distillery was in operation in Ventresca's house, whose address was given. The grounds for this belief were prefaced by the following statement:

"Based upon observations made by me, and based upon information received officially from other Investigators attached to the Alcohol and Tobacco Tax Division assigned to this investigation, and reports orally made to me describing the results of their observations and investigation, this request for the issuance of a search warrant is made."

On a motion to suppress, the District Court upheld the validity of the warrant. The Court of Appeals held the warrant insufficient because it was not clear that the information it contained was based upon the knowledge of Mazaka or other reliable investigators. The Supreme Court reversed, with two Justices dissenting. The majority opinion stated that:

"The affidavit in this case, if read in a commonsense way rather than technically, shows ample facts to establish probable cause and allow the Commissioner to issue the search warrant. The affidavit at issue here, unlike the affidavit held insufficient in *Aguilar*, is detailed and specific. It sets forth not merely 'some of the underlying circumstances' supporting the officer's belief, but a good many of them. * * * A qualified officer's detection of the smell of mash has often been held a very strong factor in determining that probable cause exists so as to allow issuance of a warrant. Moreover, upon reading the affidavit as a whole, it becomes clear that the detailed observations recounted in the affidavit cannot fairly be regarded as having been made in any significant part by persons other than full-time Investigators of the Alcohol and Tobacco Tax Division of the Internal Revenue Service."

In the concluding paragraph of the majority opinion, it was pointed out that the upholding of the actions of law enforcement officers following the proper constitutional course "is no less important to the administration of justice than the invalidation of convictions because of disregard of individual rights or official overreaching." Our system of justice must be "responsive both to the needs of individual liberty and the rights of the community."

We hold that, in this case, there was probable cause for the issuance of the warrant.

*Judgments affirmed, costs to be paid by the appellant.*